UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ANTHONY CHAVEZ,

    Plaintiff,

v.                                                                                              Civ. No. 1:24-438 GJF/LF

CENTURION, LLC; CENTURION DETENTION
HEALTH SERVICES, LLC; MHM HEALTH
PROFESSIONALS, INC.; BERNALILLO
COUNTY BOARD OF COUNTY
COMMISSIONERS; STEVEN WHEELER, in his
individual capacity; ROCK WELCH, in his
individual capacity; JEFFREY KELLER, in his
individual capacity; ANGELA GOEHRING, in her
individual capacity; KAREN RILEY, in her
individual capacity; and JOHNNIE LAMBERT, in
her individual capacity,

    Defendants,

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART MOTION TO DISMISS

THIS MATTER is before the Court on Defendants Centurion Health Services, LLC; MHM Health Professionals, LLC; Stephen Wheeler, Angela Goehring, and Johnnie Lambert's (together "Centurion" or "Centurion Defendants") Rule 12(c) Motion to Dismiss on Statute of Limitations Grounds ("Motion"). ECF 15. The Motion is fully briefed. *See* ECFs 15, 17, and 22. For the reasons explained below, the Court **GRANTS** the Motion to the extent that it seeks dismissal of discrete claims for deliberate indifference occurring outside the limitations period. The Court **DENIES** the Motion in all other respects.

**I.     BACKGROUND**[1]

This case concerns medical care afforded to an inmate at Bernalillo County Metropolitan Detention Center ("MDC"). Plaintiff Anthony Chavez spent three separate periods in MDC's custody between December 2019 and May 2021. *See* ECF 1 at 7–12 ¶¶ 20–45. At all relevant times, MDC contracted with Centurion to provide medical care to MDC inmates. *See id.* at 3–7 ¶¶ 9–19.[2]

Chavez submitted a health services request seeking treatment for a potential back infection on December 21, 2019. *Id.* at 7 ¶ 21. Centurion staff evaluated him several times between December 21, 2019, and January 7, 2020, for range of motion issues and a painful back wound leaking fluid. *Id.* at 7–8 ¶¶ 20–28. Centurion staff gave Chavez Ibuprofen and Tylenol, redressed his wound, and told him to drink more water. *Id.* at 7–8 ¶¶ 21, 25–27. Centurion staff never referred Chavez to an outside medical provider and occasionally provided him no treatment after an evaluation. *Id.* at 7–8 ¶¶ 22–24, 28. MDC released Chavez from its custody on January 7, 2020, ending his first period of detention. *Id.* at 8 ¶ 28. The next day, Chavez sought treatment and was hospitalized at University of New Mexico Hospital ("UNMH"). *Id.* at 8 ¶ 29. UNMH noted that MDC failed to properly treat Chavez and that MDC released him without his medication. *Id.* at 8–9 ¶¶ 29–30. UNMH staff redressed Chavez's wound and provided him antibiotics. *Id.* at 9 ¶ 31.

On February 5, 2020, Chavez was back in MDC's custody and submitted another health services request seeking treatment for his back wound. *Id.* at 9 ¶ 32. On February 16, 2020, medical

---

[1] The facts that follow come from the Complaint [ECF 1], which the Court accepts as true when deciding a Rule 12(c) Motion. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[2] The Complaint alleges that Centurion acted as an agent for MDC. ECF 1 at 3 ¶ 9.

2

staff denied Chavez a new mattress and a Meloxicam[3] prescription and instead directed Chavez "to control his own pain through controlled breathing and visualization techniques." *Id.* at 9 ¶ 33. Centurion staff noted that Chavez struggled to walk and that he needed an MRI, which he did not receive. *Id.* at 9–10 ¶¶ 34, 38, 40. Chavez eventually received a Meloxicam prescription and an increased dose of pain medication. *Id.* at 10 ¶¶ 38–39. Centurion staff denied Chavez any diagnostic care or infection treatment. *Id.* at 9–10 ¶¶ 33, 38–40. On May 8, 2020, after again being released from custody, Chavez returned to UNMH to seek treatment for his back wound, ending his second period of detention. *Id.* at 11 ¶ 41.

On April 14, 2021, Chavez was again back in MDC's custody and submitted another health services request seeking treatment for his back injury. *Id.* at 11 ¶ 42. Centurion staff diagnosed Chavez with sprains and minor trauma, noted his swollen back and musculoskeletal deformities, but failed to treat his injuries and instead sent him back to his cell with Ibuprofen. *Id.* at 11 ¶ 43. On May 1, 2021, Chavez could not walk due to back pain, and Centurion staff prescribed D-Cerin cream.[4] *Id.* at 11 ¶ 44. On May 4, 2021, MDC transferred Chavez to UNMH, ending his third period of detention. *Id.* at 11–12 ¶ 45. There, UNMH staff noted that Chavez had an untreated and undiagnosed bone infection with possible infections and inflammation in the nearby fluid, tissue, and spinal cord.[5] *Id.*

---

[3] Meloxicam is "an anti-inflammatory drug that reduces pain, swelling, and stiffness." ECF 1 at 9 ¶ 33.

[4] D-Cerin cream is an over-the-counter moisturizer. ECF 1 at 11 ¶ 44.

[5] Specifically, "[h]ospital staff noted that Mr. Chavez had been suffering from untreated and undiagnosed osteomyelitis (bone infection and inflammation) with a possible intradisc abscess (a collection of pus or infected fluid surrounded by inflamed tissue) and epidural phlegmon (inflamed spinal tissue usually caused by infection)." ECF 1 at 11–12 ¶ 45.

Chavez brought his Complaint on May 6, 2024, pursuant to 42 U.S.C. § 1983, accusing the Defendants of acting with deliberate indifference to his serious medical needs and maintaining a policy and practice of denying MDC inmates medical care, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* at 25–30 ¶¶ 100–20. The Complaint alleges that Centurion failed to treat Chavez's back infection as part of a policy and practice of denying inmates' medical care. *See id.* at 12–24 ¶¶ 47–95. According to the Complaint, Centurion had a financial incentive to underdiagnose, undertreat, and underreport inmates' medical conditions.[6] *Id.* at 13–16 ¶¶ 51–59. Additionally, the Complaint cites an October 23, 2018 New Mexico Legislative Finance Committee report finding that understaffing within the New Mexico Corrections Department – and within Centurion – threatened inmates' medical care. *Id.* at 16 ¶ 60. The Complaint further contends that Centurion failed to properly document inmates' medical conditions and failed to communicate information regarding medical conditions when referring inmates to off-site providers. *Id.* at 17–19 ¶¶ 66–74. Finally, the Complaint states that Centurion had a policy and practice of failing to adequately train or supervise employees. *Id.* at 19–21 ¶¶ 75–82. The Complaint alleges that the challenged policies and practices violated Chavez's rights and contributed to his injuries. *Id.* at 2, 12 ¶¶ 2, 47.

---

[6] According to the Complaint, Centurion did not have to pay for any inmate hospitalizations lasting at least twenty-four hours. ECF 1 at 15 ¶ 53. Accordingly, the Complaint accuses Centurion of adopting a policy and practice of keeping inmates needing outside medical attention at MDC until their conditions became sufficiently serious that a hospitalization of over twenty-four hours was certain. *Id.* at 14–15 ¶¶ 51–54.

4

## II.     APPLICABLE LAW

### A.     Motion for Judgment on the Pleadings

A motion for judgment on the pleadings for a "failure to state a claim upon which relief can be granted" may be asserted "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In addition, "[a] motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000); *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011) (noting that "[w]e use the same standard when evaluating 12(b)(6) and 12(c) motions" (quotation omitted)).

To survive such a motion, a claim for relief must "contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). A court must therefore "'assume the veracity' of the well-pleaded factual allegations 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Iqbal*, 556 U.S. at 678 (explaining that such well-pled "factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

A court can decide a Rule 12(c) motion asserting a statute of limitations defense if the complaint alleges – and the parties do not dispute – specific dates on which relevant events occurred. *See Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (collecting cases); *Gardner v. Schumacher*, No. 23-2150, 2024 WL 5199962, at *2 (10th Cir. Dec. 23, 2024) (citing

*Herrera*, 32 F.4th at 991). A court will grant such a motion when the undisputed relevant dates make a challenged claim untimely. *See Gardner*, 2024 WL 5199962, at *2.

      **B.**      **Timeliness of Causes of Action for Deliberate Indifference to Serious Medical Needs**

Federal courts sitting in New Mexico require that plaintiffs assert § 1983 causes of action within three years after their cause of action accrued. *Herrera*, 32 F.4th at 989 (citing *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014)). A § 1983 cause of action accrues when a plaintiff has "a complete and present cause of action," such that "the plaintiff can file suit and obtain relief[.]" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotations and citations omitted). A plaintiff has a complete and present cause of action for deliberate indifference to serious medical needs when the plaintiff knows or has reason to know that the defendants caused harm by failing to adequately treat an objectively serious medical condition. *See Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018) (collecting cases); *Mallet v. N.Y. State Dep't of Corrs. & Community Supervision*, 126 F.4th 125, 132 (2d Cir. 2025); *Scott v. Angerhofer*, No. 20-CV-14 DAK, 2023 WL 6391685, at *9 (D. Utah Oct. 2, 2023). The statute of limitations for a deliberate indifference cause of action runs from the last date that the defendants acted with deliberate indifference. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (reasoning that defendants cease to act with deliberate indifference when plaintiff either leaves their custody or receives adequate medical care); *DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018) (collecting cases) (stating that the statute of limitations for a deliberate indifference cause of action begins to run on the date plaintiff received adequate treatment).

  **C.**  **Continuing Violation Doctrine**

  The continuing violation doctrine recognizes that certain causes of action, such as those for harassment and hostile work environments, by their very nature often involve repeated conduct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15 (2002); *SEC v. Kokesh*, 884 F.3d 979, 984–85 (10th Cir. 2018); *Herrera*, 32 F.4th at 993; *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). The continuing violation doctrine applies to causes of action that accrued not on a specific day but after a series of acts that collectively become actionable based on their cumulative effects or repeated nature. *See Morgan*, 536 U.S. at 115; *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019) (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 672 (10th Cir. 2016)). When the continuing violation doctrine applies, courts can hold defendants liable for conduct outside the statute of limitations, if at least one wrongful act or omission occurred within the statute of limitations. *See Morgan*, 536 U.S. at 117; *Hamer*, 924 F.3d at 1098–99.

  The continuing violation doctrine does not make timely discrete causes of action – those that accrued without reference to any cumulative effects or repeated conduct – that took place outside the statute of limitations. *See Herrera*, 32 F.4th at 997–98; *Kokesh*, 884 F.3d at 984–95; *Sierra Club*, 816 F.3d at 671 n.5 (citing *Morgan*, 536 U.S. at 113) ("The distinction between a single, continuing violation and repeated, discrete violations is important because an entirely new violation would first accrue apart from the other violations in the series and would begin a new statutory clock."); *Scott*, 2023 WL 6391685, at *9. Moreover, the continuing violation doctrine "is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Hamer*, 924 F.3d 1099 (internal quotations omitted).

7

**III.     PARTIES' PRIMARY ARGUMENTS**

The parties agree that the Complaint alleges a timely deliberate indifference cause of action surrounding Chavez's third period of detention.[7] ECF 17 at 5; ECF 22 at 3 (stating in reply, "[t]he arguments related to the May 4, 2021 hospitalization are withdrawn in this Rule 12(c) motion[.]"). The parties continue to disagree, however, over whether Chavez can seek relief for claims surrounding his first and second periods of detention. ECF 17 at 7; ECF 22 at 3.

Chavez invoked the continuing violation doctrine in his response. ECF 17 at 6–7. There, he argues that an inmate's cause of action for deliberate indifference to serious medical needs constitutes a continuing violation, and that the statute of limitations begins to run on date of the last instance of deliberate indifference. ECF 17 at 6–7. According to Chavez, the Centurion Defendants *continuously* acted with deliberate indifference to his serious medical needs from December 21, 2019, through May 4, 2021; therefore, the statute of limitations for any deliberate indifference cause of action Chavez could have alleged within that period began to run only on May 4, 2021. *Id.* at 7. Additionally, Chavez urges the Court to deny the Motion based on New Mexico's policy of allowing plaintiffs time to investigate medical injuries before a cause of action accrues and the federal policy of limiting the volume of inmate lawsuits. *Id.* at 6–7.

In reply, the Centurion Defendants assert that the continuing violation doctrine does not apply because the Complaint alleges three *discrete* causes of action – one for each period of

---

[7] The issues before the Court narrowed during briefing. In the Motion, the Centurion Defendants contended that the statute of limitations for Chavez's causes of action began to run three years from the date that he knew or should have known of his injury, making the Complaint – filed three years and two days after the third period of detention – untimely. ECF 15 at 4–6. In response, Chavez pointed out that the filing deadline fell on a Saturday, making his Complaint timely because it was filed on the following Monday. ECF 17 at 4–5. In reply, the Centurion Defendants conceded that Chavez's allegations concerning his third period of detention are timely. ECF 22 at 3. Accordingly, the Centurion Defendants now argue only that the Complaint is untimely to the extent that it seeks relief for allegations surrounding Chavez's first two periods of detention. *Id.* at 3–8.

detention – that do not rely on cumulative effects or the repeated nature of Defendants' conduct to become actionable. ECF 22 at 4–8. Additionally, the Centurion Defendants insist that federal law governs the accrual dates in the Complaint, and that requiring Chavez to file three lawsuits alleging three discrete causes of action would not frustrate the federal policy of limiting the volume of inmate lawsuits. *Id.* at 4, 6–7.

## IV.   ANALYSIS

The Complaint seeks relief pursuant to § 1983 within the forum state of New Mexico. ECF 1 at 2, 25–30 ¶¶ 4–7, 100–20. Accordingly, the alleged causes of action carry a three-year statute of limitations. *See Herrera*, 32 F.4th at 989. Additionally, the Complaint alleges – and the parties do not dispute – specific dates on which relevant events occurred. *See* ECFs 1, 15, 17, 22. Therefore, on the instant Rule 12(c) Motion, this Court can decide whether the undisputed relevant dates in the Complaint plausibly allege timely causes of action. *See Gardner*, 2024 WL 5199962, at *2 (citing *Herrera*, 32 F.4th at 990).

The Court's analysis is twofold. First, the Court explains that the Complaint alleges three discrete causes of action – one for deliberate indifference that occurred during each period of detention. Second, the Court elucidates why the continuing violation doctrine does not save the Complaint's discrete causes of action arising from Chavez's first two periods of detention.

**A. The Complaint alleges a discrete deliberate indifference cause of action for each period of detention because each cause of action accrued without reference to cumulative effects or repeated nature of the alleged conduct.**

The Tenth Circuit explained the accrual of a § 1983 cause of action in *Herrera v. City of Espanola*. 32 F.4th 980. There, the plaintiffs alleged that the city violated the plaintiffs' Fourteenth Amendment rights by terminating water service to their home. *Id.* at 986–89. The plaintiffs

9

objected to the service termination, and the city informed them that service would only resume upon payment of the previous owner's past due bills. *Id.* at 987. The plaintiffs continued to object, and later argued in court that the city's failure to resume service constituted a continuing violation. *Id.* The Tenth Circuit disagreed, reasoning that the plaintiffs' causes of action accrued when they received the city's justification for terminating service because, at that point, the plaintiffs knew or had reason to know that the city caused them harm, and "no additional act or cumulative effect of acts was needed to give rise to the [plaintiffs' cause of action.]" *See id.* at 992, 998. Accordingly, the Tenth Circuit held that the plaintiffs alleged a discrete cause of action, not a continuing violation. *Id.* at 998.

The United States District Court for the District of Utah applied *Herrera* to determine the accrual of a deliberate indifference cause of action. *See Scott*, 2023 WL 6391685. In *Scott*, the plaintiff accused the defendants of acting with deliberate indifference by failing to provide adequate medical care at various times during his incarceration between 2011 and 2018. *Id.* at *2–4. The plaintiff argued that the defendants engaged in a continuing violation and that, therefore, the statute of limitations for each instance of deliberate indifference ran from the date of the last instance of deliberate indifference. *Id.* at *9. The district court disagreed, holding that the violation was not continuing; rather, a discrete cause of action accrued *each time* the defendant allegedly demonstrated deliberate indifference to the plaintiff's serious medical needs. *See id.* Thus, the court reasoned that the plaintiff alleged a series of discrete causes of action – not a continuing violation – because the causes of action were "not premised on a series of individually unactionable occurrences that make out a violation only when combined." *See id.* (quoting *Herrera*, 32 F.4th at 1002).

10

While *Herrera* and *Scott* represent evolving Tenth Circuit precedent,[8] their distinction between discrete and continuing causes of action aligns with case law in the Tenth Circuit and elsewhere. *See, e.g.*, *Morgan*, 536 U.S. at 115 (reasoning that a hostile work environment cause of action may be a continuing violation because it does not *occur* on any specific day; rather, "[i]t occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own"); *Kokesh*, 884 F.3d at 984–85 (reasoning that misappropriating funds was not a continuing violation; rather, it was a series of identical, discrete causes of action); *Figueroa v. D.C. Metro. Police Dep't*, 633 F.3d 1129, 1135 (D.C. Cir. 2011) (holding that failure to pay overtime in *one* pay period represents a discrete cause of action that does not become a continuing violation merely because it occurred *each* pay period); *Knox v. Davis*, 260 F.3d 1009, 1014 (9th Cir. 2001) (reasoning that a discrete cause of action accrued when the state terminated plaintiff's inmate visitation rights; any subsequent enforcement of the termination was a continuing *effect*, not a continuing *violation*).

Chavez relies on *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), to show that a deliberate indifference to serious medical needs cause of action alleges a continuing violation that accrues on the last date of the alleged deliberate indifference. ECF 17 at 6. In *Heard*, the plaintiff accused the defendants of acting with deliberate indifference by failing to treat his hernia. 253 F.3d at 317. The court reasoned that the violation continued "for as long as defendants had the power to do something about [the plaintiff's] condition[,]" and accrued only when the defendants released the

---

[8] The Tenth Circuit held in *Herrera* for the first time that the continuing violation doctrine could apply to a § 1983 cause of action. *See Herrera*, 32 F.4th at 994. *Scott* is thus far the only application of *Herrera* to a deliberate indifference cause of action of which the Court is aware. *See Scott*, 2023 WL 6391685.

11

plaintiff from custody or provided the plaintiff adequate medical care.[9] *See id.* at 318. The plaintiff filed his complaint within the relevant statutory period after the defendants released him from their custody; therefore, the court reasoned that the plaintiff alleged a timely cause of action. *Id.* at 320.

The Second Circuit illustrated how accusations of a policy and practice of deliberate indifference to serious medical needs can allege a continuing violation in *Shomo v. City of New York*. 579 F.3d 176. There, the plaintiff was held in defendants' custody from September 20, 1999, through January 4, 2001. 579 F.3d at 179. The plaintiff filed his complaint on September 26, 2003, alleging that the defendants continuously violated his rights by adopting a policy and practice of disregarding treatment recommendations. *Id.* at 180. The court reasoned that the plaintiff alleged a continuing violation because he alleged (1) an ongoing policy of acting with deliberate indifference to his medical needs; and (2) some timely acts taken in furtherance of the policy. *Id.* at 182.[10] According to the court, this rule "screens out Eighth Amendment [causes of action] that challenge discrete acts of unconstitutional conduct[.]" *Shomo*, 579 F.3d at 182.

Here, the Complaint alleges three discrete causes of action for deliberate indifference to Chavez's serious medical needs, with each having accrued and become discrete by the time

---

[9] Whereas the Seventh Circuit reasoned that a deliberate indifference cause of action accrues when the defendants either release the plaintiff from their custody or provide adequate medical treatment, the Tenth Circuit holds that a deliberate indifference cause of action accrues when the plaintiff knows or should know that the defendants acted with deliberate indifference and caused substantial harm. *See Vasquez*, 882 F.3d at 1276. This Court is bound by the *Vasquez* standard, but even under *Heard,* Chavez's causes of action concerning his first two periods of detention are untimely because the defendants released Chavez from their custody more than three years before the Complaint was filed. *See Sierra Club*, 816 F.3d at 671 n.5 (once a continuing violation ends, it becomes a discrete cause of action).

[10] The Tenth Circuit interpreted *Shomo* as holding that a continuing failure to comply with the duty to provide medical care is a continuing violation. *See Kokesh*, 884 F.3d at 984–85. As the Court will explain, the Complaint does not plausibly allege that Defendants *continuously* failed to comply with their duty to provide Chavez medical care from December 21, 2019, through May 4, 2021. Instead, the Complaint alleges three *discrete* periods – corresponding to Chavez's three discrete periods of detention – where Defendants allegedly failed to comply with their duty to provide Chavez medical care.

12

Defendants either released Chavez from their custody or provided him adequate medical care. *See Herrera*, 32 F.4th at 997–98; *Kokesh*, 884 F.3d at 984–95; *Sierra Club*, 816 F.3d at 671 n.5; *Scott*, 2023 WL 6391685, at *9; *Heard*, 253 F.3d at 318. The Complaint does not plausibly allege one continuing violation that spanned all three periods of detention. *See Alpenglow Botanicals, LLC*, 894 F.3d at 1195. Instead, Chavez's § 1983 causes of action accrued when he complained to Defendants of his back injury, and Defendants failed to provide adequate treatment. *See Vasquez*, 882 F.3d at 1276. Each alleged violation continued until Defendants either released Chavez from their custody or provided him adequate medical care, at which point the alleged violations became discrete causes of action.[11] *See Heard*, 253 F.3d at 318–19; *Sierra Club*, 816 F.3d at 671 n.5. Chavez alleges discrete causes of action that accrued on specific days; his causes of action are not based upon a series of acts that collectively became actionable based on their cumulative effects or repeated nature. *See Morgan*, 536 U.S. at 115. Indeed, the allegations do not plausibly allege that Defendants *continuously* failed to act in accordance with their duty to provide Chavez medical care from December 21, 2019, through May 4, 2021. *See Kokesh*, 884 F.3d at 984–85 (applying *Shomo*).

The Court turns now to the specific allegations in the Complaint. The Complaint's first cause of action accrued on December 21, 2019, when, according to the Complaint, Chavez submitted his first health services request seeking treatment for a back infection, and Defendants sent him back to his cell with Ibuprofen. ECF 1 at 7 ¶ 21. That cause of action continued from December 21, 2019, through January 7, 2020, during which time Defendants allegedly had power

---

[11] The statute of limitations for each began to run once the alleged violation became a discrete cause of action. *See Heard*, 253 F.3d at 318–19.

13

to adequately treat Chavez's back infection but chose not to. *Id.* at 7–8 ¶¶ 21–28. The first cause of action became discrete when MDC released Chavez on January 7, 2020. *Id.* at 8 ¶ 28.

The Complaint's second cause of action accrued on February 16, 2020, when, according to the Complaint, Defendants failed to adequately respond to Chavez's second health services request. *Id.* at 9 ¶ 32–33. The second cause of action continued from February 16, 2020, through roughly May 8, 2020,[12] during which time Defendants allegedly had power to adequately treat Chavez's back infection but chose not to. *Id.* at 9–11 ¶¶ 33–40. The second cause of action became discrete when MDC released Chavez on May 8, 2020. *Id.* at 10–11 ¶¶ 40–41.

The Complaint's third cause of action accrued on April 15, 2021, when, according to the Complaint, Defendants responded to Chavez's third health services request by diagnosing him with a minor injury and returning him to his cell with Ibuprofen. *Id.* at 11 ¶¶ 42–43. The third cause of action continued from April 15, 2021, through May 4, 2021, during which time Defendants allegedly had power to adequately treat Chavez's back infection but chose not to. *Id.* at 11–12 ¶¶ 42–45. The third cause of action became discrete on May 4, 2021, when Defendants transferred Chavez to UNMH to receive treatment. *Id.* at 11–12 ¶ 45.

The causes of action alleged in the Complaint differ from the cause of action alleged in *Heard* because MDC released Chavez from its custody during the relevant period. *See Heard*, 253 F.3d at 318. The plaintiff in *Heard* was in custody the entire time of the continuing violation alleged in his complaint. *See id.* Chavez argues that Defendants "acted with deliberate indifference from December 21, 2019 through May 4, 2021, when he was finally transferred to an outside facility for emergency medical care." ECF 17 at 7. The Complaint, however, does not plausibly allege a

---

[12] The Complaint does not state whether MDC released Chavez on May 7 or May 8, 2020. ECF 1 at 10–11 ¶¶ 40–41.

continuing violation spanning these dates. *See Alpenglow Botanicals, LLC*, 894 F.3d at 1195. A deliberate indifference cause of action shifts from continuing to discrete when the defendants either (1) release the plaintiff from their custody; or (2) provide the plaintiff adequate medical care. *See Heard*, 253 F.3d at 318. MDC released Chavez from its custody on January 7, 2020, and again on May 8, 2020; therefore, Chavez's deliberate indifference causes of action concerning his first two periods of detention became discrete on those dates, and the statutory period began to run. *See id.*

Moreover, Chavez's continuing violation theory seeks to hold Defendants liable for periods during which Chavez was not in Defendants' custody. The Eighth and Fourteenth Amendments grant only convicted prisoners and pretrial detainees a right to be free from deliberate indifference to serious medical needs. *See Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). Chavez, however, was neither a convicted prisoner nor a pretrial detainee at MDC for roughly 75% of the period that the Complaint accuses Defendants of *continuously* violating his Eighth and Fourteenth Amendment rights. *See* ECF 1 at 8–9, 11 ¶¶ 28, 32, 41–42. The Defendants necessarily did not act with deliberate indifference to Chavez's serious medical needs when he was not in their custody because they lacked power to treat him; therefore, the violation could not have been *continuous*. *See Heard*, 253 F.3d at 318; *Strain*, 977 F.3d at 989.

**B. The continuing violation doctrine does not make timely the Complaint's allegations surrounding Chavez's first two periods of detention because the doctrine does not make timely discrete causes of action accruing outside the statutory period.**

The Complaint alleges three discrete causes of action [*supra* Part IV.A], and it seeks relief pursuant to § 1983 [ECF 1 at 25–30 ¶¶ 100–20]; therefore, the causes of action are subject to a three-year statute of limitations. *See Herrera*, 32 F.4th at 990. The cause of action surrounding Chavez's first period of detention accrued and became discrete by January 7, 2020, and the cause

15

of action surrounding his second period of detention accrued and became discrete by May 8, 2020. *Supra* at 13–14. Thus, the deadlines to plead these causes of action fell on January 9, 2023, and May 8, 2023, respectively.[13] *See Herrera*, 32 F.4th at 990. Chavez filed the Complaint on May 6, 2024. ECF 1 at 30. Accordingly, the causes of action surrounding Chavez's first two periods of detention are untimely. *See Herrera*, 32 F.4th at 990.

In an effort to salvage the first two causes of action, Chavez urges this Court to apply the continuing violations doctrine and conclude that the period between December 21, 2019, and May 4, 2021, represents a single ongoing violation of Chavez's rights. ECF 17 1t 7. The continuing violation doctrine applies to a pattern of repeated or accumulated conduct that may not be actionable on its own. *See Morgan*, 536 U.S. at 115; *Herrera*, 32 F.4th at 993. The continuing violation doctrine does not make timely, however, discrete causes of action that accrued outside the statutory period, even when those discrete causes of action are part of a series of discrete causes of action that continued into the statutory period. *See Morgan*, 536 U.S. at 111; *Rae v. Woodburn Pub. Schs.*, 113 F.4th 86, 103 (1st Cir. 2024), *petition for cert. filed*, No. 24-794 (U.S. Jan. 21, 2025).

A complaint alleging untimely conduct as part of an ongoing policy and practice is not automatically entitled to the continuing violation doctrine because "related discrete acts cannot be combined into a single unlawful practice for the purposes of timely filing." *Rae*, 113 F.4th at 103 (internal quotations omitted) (quoting *Morgan*, 536 U.S. at 111). Indeed, in *Morgan*, the Supreme Court rejected this "serial violations" approach to the continuing violations doctrine. 536 U.S. at

---

[13] January 7, 2023, fell on a Saturday, making January 9, 2023, the next day that did not fall on a weekend or legal holiday. *See* Fed. R. Civ. P. 6(a)(1)(C); *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1167 n.1 (10th Cir. 2000) (taking judicial notice of the days of the week upon which relevant dates fell).

114. There, the Court reversed a Ninth Circuit holding that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." *Id.* The Court reasoned that discrete causes of action constitute separate – not continuing – unlawful practices. *Id.* at 114–15. Separate and discrete causes of action cannot be strung together to form a single continuing violation. *See id.* at 114; *Rae*, 113 F.4th at 103.

Here, as the Court has explained, the Complaint alleges three discrete causes of action, two of which accrued outside the statutory period, that do not rely on a pattern of cumulative effects or the repeated nature of such conduct. *See supra* Part IV.A. Therefore, the continuing violation does not make timely the Complaint's discrete alleged causes of action concerning Chavez's first two periods of detention. *See Morgan*, 536 U.S. at 114–15; *Herrera*, 32 F.4th at 993. Chavez may have suffered effects of Defendants' alleged deliberate indifference between the discrete causes of action, but continuing effects of discrete causes of action do not implicate the continuing violation doctrine. *See Herrera*, 32 F.4th at 999; *Hamer*, 924 F.3d 1099. Moreover, Chavez cannot rely on the continuing violation doctrine by alleging a policy and practice of improperly denying inmates medical care because the Complaint attempts to construct a continuing violation by stringing together related *but discrete* causes of action. *See Morgan*, 536 U.S. at 111; *Rae*, 113 F.4th at 103; *Shomo*, 579 F.3d at 182.

Chavez points to New Mexico's policy of "favor[ing] the right of action rather than the right of limitation[,]" as reason to deny the Motion. ECF 17 at 6 (citation omitted). According to Chavez, under New Mexico law, his deliberate indifference causes of action did not accrue until he retained counsel, had time to investigate the facts, and became aware of the full extent of his

17

injuries. *See id.* "Determining the accrual date of a § 1983 action, however, 'is a question of federal law that is *not* resolved by reference to state law.'" *Herrera*, 32 F.4th at 990 (emphasis in original) (quoting *Wallace*, 549 U.S. at 388). Accordingly, this Court's decision rests on federal law without reference to New Mexico law. *See id.*

Chavez also raises pragmatic concerns, citing to *Heard* for the proposition that liberally applying the continuing violation doctrine to inmate lawsuits lessens the burden that such lawsuits impose on the courts. ECF 17 at 7 (citing *Heard*, 253 F.3d at 320). Indeed, both Congress and the courts have recognized policy goals of reducing the quantity of inmate lawsuits. *See Jones v. Bock*, 549 U.S. 199, 223–24 (2007). In *Heard*, however, the court worried about incentivizing inmates to bring *daily* lawsuits alleging a continuing violation to preserve the right to sue on an ongoing violation that lasted longer than the statutory period. *See* 253 F.3d at 319–20. Here, Chavez did not have to file daily lawsuits to preserve the right to sue on a continuing violation because he alleges three discrete causes of action, none of which lasted longer than the three-year limitations period. *See supra* Part IV.A. Chavez would have had to file only three lawsuits instead of one, which does not substantially increase the quantity of inmate lawsuits. *See Jones*, 549 U.S. at 223–24.

## V.     CONCLUSION

**IT IS THEREFORE ORDERED** that the Centurion Defendant's Motion [ECF 15] is **GRANTED** to the extent it seeks dismissal of discrete claims for deliberate indifference that arose from the medical treatment, or lack thereof, that Chavez received during his first two periods of incarceration at MDC, ending on January 8, 2020, and May 8, 2020, respectively. The Motion is otherwise **DENIED**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**